[No. 1240, September 4th, 1908.]

TERRITORY OF NEW MEXICO, Appellant, v. CHARLES R. JONES, Appellee.

SYLLABUS (BY THE COURT).

1. Slot machines, where the chances are unequal, with the chances in favor of the machine, are ejusdem generis, with gambling games specifically mentioned in Sec. One, Chap. 64, Laws of 1907, and are illegal.

2. Slot machines of the kind described in the stipulation filed in this case, are banking games, and come within the inhibition of Sec. One, Chap. 64, Laws of 1907.

Appeal from the District Court for Guadalupe County before EDWARD A. MANN, Associate Justice. Reversed and Remanded.

JAMES M. HERVEY, Attorney General, for Appellant.

Gambling legislation in New Mexico, Compiled Laws, 1884, secs. 880-883, 891, 892, (L. 1861); Compiled Laws, 1897, secs. 1314, 3199; Laws of 1887, 1893, 1897, chapters 31 and 32, Laws of 1907, chap. 64, secs. 1, 2, 5; Crow v. The State, 6 Texas 335; Job 5; Psalms 21; Joseph v. Miller, 1 N. M. 621.

"Statutes for the suppression of fraud should be liberally construed." Bacon's Abr. vol. 9, p. 251; Sutherland Statutory Construction 427; Randolph v. The State, 9 Texas 521 (1853); Portis v. The State, 27 Ark. 360.

"Ejusdem generis" means of the same kind of species. When general words follow an enumeration of particular words, in interpreting the statute, the general must be

confined to the same class as the particular, but it does not necessarily mean that the general words should include nothing except what was in every way like the words mentioned. Territory v. Gutierrez, 78 Pac. 143; definition of "ejusdem generis" in 3 Words and Phrases Judicially Defined; ex parte Leland, S. C. 1, Nott & McC. 460; Moore v. The State, 146 Ill. 600; People v. New York and M. B. Ry. Co., 84 N. Y. 565; Phillips v. Christian Co., 87 Ill. App. 481, 484; Remick v. Boyd, 99 Pa. St. 555; Union Co. v. Ussery, 147 Ill. 208; Misch v. Russell, 136 Ill. 22; Reg. v. Dickenson, 7 El. Bl. 831; Wanstead Local Board v. Hill, 13 C. B. N. S. 479; re Barre Water Co., 62 Vt. 27.

A slot machine when shown to be a gambling apparatus or device is within the prohibition of Laws of 1907, chapter 64. People v. Carroll, 80 Cal. 157; Sterns v. The State, 21 Texas 693; Webb v. State, 17 Texas, 206; Crow v. State, 6 Tex. 335; Randolph v. State, 9 Tex. 521; Bell v. State, 32 Tex. Cr. R. 187; Faucett v. State, 46 Tex. Cr. R. 114; Mims v. State, 88 Ga. 458; Brown v. State, 40 Ga. 692; Commonwealth v. Wyatt, 6 Randolph Va. 694; Christopher v. State, 41 Tex. Cr. R. 239; State v. Gaughan, 55 W. Va. 692; Portis v. State, 27 Ark. 360; Trimble v. State, 27 Ark. 355; Euper v. State, 35 Ark. 629; State v. Rosenbalt, 185 Mo. 114; Eubanks v. State, 5 Mo. 451; State v. Gittlee, 6 Ore. 426; in re Lee Tong, 18 Fed. 253; Meeks v. State, Tex. 1903, 74 S. W. 910; Oblennis v. State, 12 Mo. 311 (1848); Kolshorn v. The State, 97 Ga. 343; Vicaro v. The Commonwealth, Dana, Ky. 1846, 506; Sutherland on Statutory Construction, sec 420.

WHARTON & LAWSON for Appellee.

The word "or" in the Laws of 1907, chap. 64, sec. 1, is used in the sense of "to-wit." 2 Rawle's Revision, Bouvier's Law Dictionary 554; 8 Mass. 59; 2 Gray 502; 13 Vt. 687; 1 Dall. 150; Arthur v. Cummings, 91 U. S. 362; Weilbacher v. Merritt, 37 Fed. Rep. 87; 2 Fed. Statutes, Annotated 442, sec. 302.

Under the doctrine of "ejusdem generis", gambling devices such as slot machines, are not included within the

purview of Laws of 1907, chap. 64. Sutherland on Statutory Construction, vol. 2, sec. 422, cases cited pp. 815, 816, illustration on pp. 815-820, 824; 44 Am. St. Rep. 58; 32 Am. St. Rep. 202; State v. Cannon, 106 Mo. 488; State v. Dimisse, 109 Mo. 434; State v. Shuman, 133 Mo. 111; State v. South, 136 Mo. 673; U. S. v. Wilson, 58 Fed. 768; Edgcomb v. His Creditors, 19 Nev. 149; 97 Am. Dec. 179; Hurd v. McClelland, 14 Colo. 213, 23 Pac. 792; Balcomb v. Empire Lumber Co., 91 Ga. 651, 44 Am. St. Rep. 58; Misch v. Russell, 136 Ill. 22, 12 L. R. A. 25; Ambler v. Whipple, 139 Ill. 311, 32 Am. St. Rep. 202; Roberts v. Detroit, 102 Mich. 64, 27 L. R. A. 572; American Manganese Co v. Virginia Manganese Co., 91 Va. 272; People v. Dolan, 5 Wyoming 235, 39 Pac. 752.

### STATEMENT OF FACTS

On April 6th, A. D., 1908, an information was filed in the District Court of the Sixth Judicial District, sitting within and for the county of Guadalupe, charging Charles R. Jones, and William H. Gleason, with having unlawfully run and operated (1) a banking game of chance, to-wit: a slot machine, (2) with having unlawfully run and operated a banking game of chance, to-wit: roulette; and (3) with having unlawfully run and operated a certain banking game, to-wit: a slot machine.

The defendant Gleason was not found, but Charles R. Jones, was taken into custody.

On April 6th, 1908, the Territory dismissed the second count of the information being the count which charged the defendant with having unlawfully run and operated the banking game of chance known as roulette. The defendant filed a demurrer to the information, but later entered a plea of not guilty. The demurrer was afterwards sustained by the court and the information dismissed to which action of the court the territory excepted and prayed an appeal to the Supreme Court.

On the 6th day of July, 1908, a stipulation was entered into between the several attorneys in the case, which omitting the caption and formal parts, reads as follows, to-wit:—

STIPULATION OF FACTS.

"It is hereby stipulated and agreed by the undersigned that the following facts shall be and constitute the basis upon which the Supreme Court may act in determining its action upon the appeal in the above entitled cause, upon the appeal of the Territory from the order of the District Court in sustaining defendants' demurrer to the information filed herein:—

"That on the date mentioned in said information the defendant, Charles R. Jones, being the owner and proprietor of a saloon in Santa Rosa, Guadalupe County, New Mexico, did run and operate the following device or apparatus, which was kept and exhibited and owned by him at his saloon in said town, and which is the slot machine mentioned in the information filed by the district attorney herein and to which defendant filed the demurrer above mentioned, namely, a case, box, or frame about five feet in height and about four feet wide; that on the inside thereof is certain machinery so constructed as to make it work automatically when in running order, that there are a number of slots of different colors on the top of the machine, and if the player puts a nickel into the slot of any color and pushes down a crank it starts a circular disk to revolving, containing colors corresponding to the colors on the slots, and if the color shown by the indicator over the disk at which the disk stops revolving is the same color as the slot in which the coin is deposited a certain valve will open and pay out to the player from one to forty times the amount played by the player, according to the color played by him. If the indicator does not stop at the color played, the player loses the amount played. That there is a common fund placed in the machine by the defendant and constantly kept there, against which the players can play, to which the players' losings are added and from which his winnings are taken. In other words, if the nickel is placed in the green slot and the disk stops at the point so the indicator points at the green color on the disk, it pays five times the original nickel played, and the yellow pays ten, the white twenty, and the blue forty, when

any of the same are similarly played. If, on the other hand the indicator shows on some color which the player has not played, his money so played by him goes into the common fund and becomes the property of the defendant, and is lost to the player. Whether or not the player wins or loses is wholly a matter of chance.

"The machine above described is a game of hazard or chance, in which small sums of money are ventured for the chance of obtaining a larger sum of money. The machine above described is what is known as a percentage game, that is, the chances are unequal in favor of the owner. The above machine and device is not in any way operated with cards or dice.

"This stipulation is only for the purpose of this appeal and shall not be used on any trial or hearing on the merits, and shall be settled and used as a bill of exceptions.

"It is agreed by the plaintiff that the defendant does not waive his right to move for the dismissal of the appeal herein, or any objection he may desire to make to a trial of the case by the Supreme Court."

## OPINION OF THE COURT.

MILLS, C. J.—As this court stated in the case of Territory v. Lotspeich, 94 Pac. 1025, some doubt may exist as to whether the right of the Territory to appeal on quashed indictments includes informations, but as no question was raised by the appellee on this point, and as the decision of this case is of great interest to a large number of the citizens of this Territory, we will proceed to consider the appeal on its merits.

The sole question involved in this case is whether or not the running and operating of a slot machine, such as is described in the stipulation of facts set out above, comes within the inhibition of Section One of Chapter 64 of the Session Laws of 1907, which act is entitled: "An Act to prohibit gambling in the Territory of New Mexico."

Section one of this act, as shown by the engrossed copy on file in the office of the secretary of New Mexico, reads as follows, to-wit:—

"Section 1. It shall hereafter be unlawful to run or

operate any banking games of chance, such as faro, monte, pass-faro, pass-monte, twenty-one, roulette, chuck-a-luck, hazard, fan tan, poker, stud poker, red and black, high and low, craps, or any other banking games or games of chance played with dice or cards by whatsoever name known, in the Territory of New Mexico."

In the bill on file in the office of the Secretary the word "craps" is interlined in ink, but no question has been raised as to its being the act which passed the legislature, and which was duly signed by the proper officials and became the law of the Territory.

It is unnecessary for us to go into a history of the legislation in regard to gambling in this territory, as the same is set out quite fully in the exhaustive briefs filed by counsel in this case. Suffice it to say that certain gambling game were permitted by law to be run in the year 1887, upon the paying of a license upon each gaming table and apparatus used in gambling and with certain slight changes, usually in the amount of the annual license to be paid; this remained the law up to the sitting of the legislature in the year 1907. In the year 1897, a license was first specifically laid upon slot machines by name, but the license so imposed was not as great as that laid upon gaming tables and other apparatus used in gaming by the law of 1887, and its amendments.

Section 1, of Chapter 64 of the laws of 1907, which we are now considering, makes it unlawful to run and operate, (1) any banking games of chance such as faro, etc. or (2) any other banking games, or (3) games of chance played with dice or cards by whatsoever name known.

An examination of the stipulation shows that the defendant did run and operate a slot machine in his saloon in the town of Santa Rosa. That there was a fund placed in the machine by the defendant and constantly kept there against which the players played and to which his losings were added and his winnings taken. That the machine is what is known as a percentage game, and that the chances are unequal in favor of the owner of the machine.

Territory v. Jones.

It is a well settled rule of law that where general words of prohibition follow an enumeration of particular games or devices which are prohibited, such general words must be construed *ejusdem generis* with the games or devices which are specifically named. 20 Cyc. 880. It is then a slot machine, such as is described above, of the same general kind or species as the particular games prohibited in this territory?

No member of this court, perhaps fortunately, has had sufficient personal experience to pass upon the question as to whether or not a slot machine such as is involved in this case is within the same class as the games prohibited by section one of the act we are considering, but an examination of the authorities cited by counsel in their briefs, convinces us that some of the courts which have passed upon statutes prohibiting gambling, gave the subject of gaming and gambling devices deep and careful study, and evidently often burned the midnight oil pursuing their investigations and watching the votaries of the Goddess of Fortune as they tempted Fate by the turning of a card, the throwing of dice or guessing the number and color on which the lively roulette ball would finally come to a stop.

In one of the earlier cases decided in this country the court used apt words in classifying games of chance. It says:—

"This court is not advised that there is, or can exist but two kinds or classes of games of chance. The first is, where the chances are equal all other things being equal. The second is, where all other things being equal, the chances are nevertheless unequal, that is in favor of one side. The standard games enumerated, so far as they are understood by this court, are of the second class, and in all three of them the chances are in favor of the exhibiter of the game or table. Now, the playing charged in the information, is at a game which by the evidence is proved to be a game wherein the chances are unequal, and in favor of the exhibiter of the table. It must, therefore, belong to the same class, and be of the like kind of gaming to which the enumerated games belong. The advan-

Territory v. Jones.

tages or chances in favor of the player or exhibiter of the table, are not the same in each case, but in each case the chances are in his favor; and this is the distinctive character which marks them as games 'of the same or like kind;' and when of the same or like kind, as classed above, it matters not by what denomination they are distinguished, or whether they are played with dice or cards, or in any other manner whatsoever. All such games, when played, or exhibited *lucri causa,* are prohibited by the act under consideration, and subject to the penalties prescribed; but if exhibited and played, not for the purpose of gain, they may or may not be offensive against the general law prohibiting gaming at cards etc., according to circumstances." Commonwealth v. Wyatt, 6 Rand. 694.

Bearing this definition in mind we are clearly of the opinion that a slot machine, such as that described in the stipulation in this case, comes within the inhibition of our statute, in that it is a game of chance, similar to those specifically named in the act, and that it is also a banking game. A fund was placed in the machine and constantly kept there by its owner, against which the players bet and to which their losings were added and their winnings taken. The machine was also a percentage game, with the chances unequal in favor of its owner. This machine seems to us to contain all of the elements of the gambling games prohibited by the statute.

The contention of the attorneys for the defense is that there can be no unlawful gambling game run in this territory, unless there is a man in charge of the game who pays the bets, takes in the winnings, etc. We do not, however, regard the presence of the operator of the gambling device as essential. Slot machines are mechanical gamblers, and being impassive, and having no sensations of any sort, they are more likely to win than gambling games which are run by gamblers, who have all of the human passions and feelings. Playing against a slot machine is a struggle between a man and a machine—a man with nerves and emotions— a machine with no nerves and no emotions. As was well said in Christopher v. State, 41 Tex. C. R. 239, in speaking of slot machines, "as to whether this is one of the gaming

devices inhibited by the statutes depend upon its construction and use. We gather from the statement of facts that, although the machine was an automaton it was very skillfully constructed for the purpose of gaming. It not only receives the bets, but decided them, and paid the money to itself, or to the winner without the intervention, for the time being, of the keeper or exhibiter, but we also gather that this machine was put in place and arranged and set in motion, and that when it was out of order it was re-arranged and repaired so it could operate. It was so skilfully constructed to serve its purpose that according to the testimony the chances were against the outsiders as four in favor of the machine to one against it. It also seems that the machine did not keep the money it won, but that the profits were divided between the appellant and his co-partner. We think this device comes fully within the meaning of the definition given by Judge Roberts in the Stearns case." Stearns v. The State, 21 Tex. 693.

In this case slot machines of the kind described in it were declared to be gaming devices within the meaning of the laws of the State of Texas, although that law was passed previous to the invention of slot machines.

In the case of Meek v. State, 74 S. W. 910, the Texas courts again held that a slot machine constructed somewhat differently from that described in the case of Christopher v. State, *supra,* was within the inhibition of the statute.

The last case which we deem it necessary to cite in this opinion is that of State v. Gaughan, 55 W. Va. 692, which was decided as late as the year 1904, and as this case is in our opinion decisive of the case at bar, we will quote from it at some length. The indictment in that case charged that the defendant Gaughan, "did knowingly and unlawfully exhibit a certain gaming table commonly called a slot machine, being a table and machine of like kind to A. B. C. and E. O. tables, and faro bank, wheel of fortune and keno tables, which machine is played by dropping coins into the slot as indicated by the machine, the coins used being a nickel, a dime and a quarter, or twenty-five cent piece, and the games played on said machine

are games in which the chances are unequal, all other things being equal, and those unequal chances are in favor of the exhibitor, the said Frank Gaughan, of the said gaming table and said slot machine."

In its opinion in deciding this case, the learned court says:—

"We think the slot machine is essentially a banking game. When the player wins, if it happens he does win, the money is paid from the machine, the bank fund or deposits of the previous and less fortunate players. It is played by the machine or exhibiter on the one side, and any and all players who choose to play on the other side, and the chances to win are unequal with the greater number of chances in favor of the machine or exhibiters. If the use of the slot machines, as they are used, is in fact a game, and being a game is of such character as may properly and legally be said to be a game of like kind with the prohibited games named within the true intent and meaning of the statute creating and defining the offense within the power and duty of the courts to punish the keeper or exhibiter of such machines is precisely the same as though the name slot machine was written on the statute.

"What then is meant by table of 'like kind' as used in this section? Is it absolutely necessary that there shall be a real table, or are the games named intended to point out certain *forms* of gambling and include all games of that particular form and character? I am clearly of the opinion that the legislature intended to forbid certain  kinds of gaming, among which are faro banks and keno tables, and all other games like them."

"Our legislature has not deemed it necessary to prohibit all forms of gaming . . . . . . . . but no game of unequal chance can be played anywhere lawfully. The legislature has in effect said that people may indulge in certain games of amusement or even bet on them to a limited extent, but no person shall cheat his companion in the game by insisting upon playing a game wherein all the chances for winning are on his side."

"The games prohibited by this chapter and indeed all unlawful gaming may be divided  into two class-

es: To the first class belong the games wherein the chances are equal. To the second class belong games wherein the chances are unequal, all other things being equal, the unequal chances being in favor of the keeper or exhibiter of the game. The games falling under the second class are enumerated in the statutes as A. B. C., E. O., and keno tables and faro banks and tables of like kind. If the words 'slot machine' were inserted in the statutes and their use prohibited, very soon they would be supplanted by other machines bearing a different name, different in form and construction."

"In order then to ascertain what games not named in Section 1 of this chapter were intended to be prohibited we must determine *in what respect the games not named must be like the games named* to bring them within the terms and meaning of the statute. *Of what must the likeness consist?* The four games named are all games of unequal chance and the unequal chances are in favor of the keeper or exhibiter of the game. The skill of the player or his luck cannot affect the general result of the game. From the very nature and character of these games the keeper or exhibiter will win oftener than the player. This, I understand to be the distinctive character of these four games, and that all other games possessing this distinctive features are games of *like kind* we think within the meaning of this statute."

In the West Virginia case the court held that the slot machine in question in that cause was *ejusdem generis* with the games mentioned in their statute, to-wit: A. B. C., E. O., faro bank and keno, and furthermore that it was within the mischief which the legislature intended to reach.

We do not think that our statute is substantially different from that of West Virginia. It is true that they use words of "like kind" while our statute reads "such as", but we think that as used these words have substantially the same meaning, and we accordingly hold that slot machines of the kind described in the stipulation before us are *ejusdem generis* with the games mentioned in Sec. 1, Chap. 64, Laws of 1907; and we also hold that the running

Territory v. Jones.

of slot machines of a kind substantially like the one in question in this case comes under the inhibition of our statute which forbids the running of "any other banking games."

For the reasons given above the judgment of the lower court is reversed, and the cause is remanded to the District Court of Guadalupe County, for further proceedings, in accordance with this opinion; and It is so ordered.